## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 07 2017, 7:16 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jewell D. Riley, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 7, 2017 <br><br> Court of Appeals Case No. <br> 20A04-1701-CR-155 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Teresa L. Cataldo, Judge <br><br> Trial Court Cause No. <br> 20D03-1408-FC-177 |

**Bradford, Judge.**

# Case Summary

[1]   Appellant-Defendant Jewell D. Riley was placed on probation after he pled guilty to Class C felony child molesting. On July 28, 2016, Riley was found to have violated the terms of his probation. With respect to this violation, Riley was sanctioned with time-served and permitted to continue on probation with GPS monitoring. On December 5, 2016, Appellee-Plaintiff the State of Indiana ("the State") filed a second notice of probation violation. Following an evidentiary hearing, the trial court found Riley in violation of the terms of his probation. As a result of this violation, the trial court revoked Riley's probation, ordered that Riley serve three years of his previously-suspended sentence in the Department of Correction ("DOC"), and imposed an additional year of probation.

[2]   On appeal, Riley contends that the trial court abused its discretion in revoking his probation. In making this contention, Riley argues that the State failed to present evidence demonstrating that he recklessly, knowingly, or intentionally failed to follow the terms of his probation. Finding no abuse of discretion by the trial court, we affirm.

# Facts and Procedural History

[3]   In January of 2015, Riley pled guilty to Class C felony child molesting and was sentenced to a term of six years, with five years suspended to probation. In addition to the standard terms of probation, Riley was ordered to undergo a risk

assessment at Lincoln Therapeutic, to comply with sex offender registration terms, to comply with the sex offender terms of probation, and to register as a sex offender. Riley was subsequently released to probation on September 29, 2015.

[4] On February 24, 2016, based on reports that Riley had contact with a minor relative and left Elkhart County without permission, the State requested that the trial court modify the terms of Riley's probation to require GPS monitoring. Following a hearing, the trial court granted the State's request.

[5] On June 8, 2016, the State filed a notice of probation violation in which it alleged that Riley had violated the terms of his probation by consuming alcohol and failing to pay certain fees. Riley subsequently admitted the alleged violations, after which the trial court sanctioned him with time served and ordered him to continue on probation with GPS monitoring. The trial court also ordered Riley to undergo an addiction evaluation and to follow up as necessary.

[6] On December 5, 2016, the State filed a second notice of probation violation. The State alleged that Riley had violated the terms of his probation by (1) violating the trial court's order that he undergo an addiction evaluation and follow the recommendations, (2) failing to fulfill certain financial obligations, and (3) violating a special probation condition for adult sex offenders, which required him to "attend, actively participate in and successfully complete a court-approved sex offender treatment program as directed by the court."

Appellant's App. Vol. II – Confidential, p. 28. The trial court conducted an evidentiary hearing on the second notice of probation violation on December 29, 2016.

[7] With respect to Riley's failure to undergo an addiction evaluation and to follow all related recommendations, Riley's probation officer, Melanie Godden, testified that in order to help ensure that Riley complied with the trial court's order that he undergo an addiction evaluation and follow-up treatment, she "gave [Riley] a list of the acceptable treatment providers." Tr. Vol. II, p. 21. From this list, Riley chose Addictions Recovery Center ("ARC") because it was convenient and "it was close to [his] area where [he] could walk if [he] had to." Tr. Vol. II, p. 26. Although Riley submitted to an initial evaluation at ARC on August 15, 2016, he failed to follow through with treatment.

[8] On November 15, 2016, Godden was notified by representatives from ARC that Riley "called to cancel an appointment and stated that counseling was too expensive so he wasn't going to be following through with treatment or attending his appointment." Tr. Vol. II, p. 15. On December 5, 2016, Godden received "another alert from ARC" indicating that while Riley had attended orientation, he had "never attended a further appointment after that." Tr. Vol. II, pp. 15, 16. Godden indicated that she "spent from August to December … instructing [Riley] multiple times to schedule appointments and that he needed to comply with treatment." Tr. Vol. II, p. 16. Despite these instructions, Riley failed to do so.

[9]     During the relevant time period, Riley received $1022.00 per month in Social Security benefits. His wife received $926.90 per month in Social Security benefits and earned approximately $676.00 per month from her part-time employment. Godden indicated that, in her experience, "the combined income between [Riley's] benefits and his wife's income were sufficient for him to live and pay for probation requirements." Tr. Vol. II, p. 16. Godden further testified that after reviewing Riley's income, she "tried to refer him to Recovery Works, which is financial assistance for treatment, so that they would pay for all or part of it at least, but [Riley] didn't qualify because his income is too high." Tr. p. 21.

[10]    Riley has not participated in any treatment, at ARC or elsewhere, since September 16, 2016. Riley acknowledged that despite being in possession of a list of other acceptable alternatives to ARC, he did not "at any point" attempt to call or make arrangements with any of these alternatives. Tr. Vol. II, p. 26. Likewise, Riley did not talk to Godden about other possible, less-expensive alternatives to ARC.

[11]    With respect to Riley's alleged failure to fulfill certain financial obligations, the record reflects that Riley owes $793.00 in costs and fees. He also owes $298.00 to the probation department for user's fees and drug screens. Riley owes an additional $1638.00 to the probation department for GPS monitoring fees. Riley testified that while he pays "as much as I can when I can," he did not dispute "the numbers of what [he] owe[d]." Tr. Vol. II, p. 24.

[12]     With respect to Riley's alleged failure to cooperate and make progress in sex offender treatment, Godden testified and explained that Riley had "struggled in treatment with accepting responsibility for his actions. He has, after much prompting, … acknowledged other victims, which is necessary to continue treatment." Tr. Vol. II, p. 17. However, as of December 2, 2016, Riley "had been suspended from treatment due to the issues of failing to progress, struggling with accepting responsibility for his actions, and also failing to pay fees." Tr. Vol. II, p. 17. "[M]oney aside, [Riley] is not invested in his sex offender specific treatment and he's not invested in making progress in that treatment." Tr. Vol. II, pp. 17-18.

[13]     At the conclusion of the evidentiary hearing, the trial court found as follows:

> The court, after hearing all the testimony, reviewing the violation of probation petition, hereby finds that the defendant has violated the terms if [sic] his probation in that he failed to follow court orders for the addictions evaluation and followup [sic] that was imposed due to the prior violation. In addition, the court also finds probable cause or, actually, the court also finds that the defendant is not compliant with his treatment through his sex offender [status] and I think that is even more concerning to the court than the addictions issue even though I -- the court knows that those are tied hand-in-hand. The GPS monitoring was also added due to the previous violation due to the defendant not taking responsibility for his actions; here again, we have the defendant not taking responsibility for his actions. It seems to be an ongoing issue where he's putting himself at risk.

Tr. Vol. II, pp. 33-34. In determining how to sanction Riley for his violations of the terms of his probation, the trial court considered that Riley had "shown a

pattern of non-compliance with court orders, not taking this seriously." Tr.

Vol. II, p. 39. The trial court further noted the following:

> [Riley] had ample opportunity to check out other treatment providers for his addictions treatment. He failed to do so. He did not follow through with what he needed to do and that is why the court has found him in violation of probation.
>
> The court mentioned those other reasons as additional, I guess, caveats or information for [Riley] that the court realizes that these two things are in conjunction with each other. There is an addictions issue for not only alcohol but other things. It's obvious from his conduct that was pointed out in the probation violation, not only this probation violation, but the previous probation violation that was filed on June 16th or, excuse me, June 8th of 2016 where, there again, was indications that the defendant was not compliant with his treatment through the sex offender program. The adage that you can lead a horse to water, but you cannot make him drink seems to be appropriate in this case.
>
> [Riley] may be seemingly attempting to comply with all court orders; however, he is not, because that is evidence from the therapist terminating his treatment. Because in order for him to be successful in his probation, a term of his probation is to be assessed and followed up by the sex offender treatment; and the idea that this is all financial is a ruse, because even though there are many people that have many things that they need and want, they are not necessarily ones that -- things that you can have.
>
> So part of the condition of probation was that he provide -- that he attend counseling and participate in counseling. That -- the addictions counseling, he didn't even attend. He didn't -- even though a list was provided for him for many other places, he chose ARC. The evidence is clear that this defendant did not call any of those other providers to find out for himself whether or

not they accepted a sliding scale, what their fees were; he did not attempt to go back. He had half of the money in August. He wasn't picked up till December. He had half of the money in August; what did he do with those funds? If he had half of the money in August, he could have saved up and in September had a full fee and been able to comply. [Riley] failed to do that. [Riley] uses the fact that his wife has ill health and that they are limited by Social Security to try and garner some type of sympathy from the court, but the court cannot be swayed by outside actions. The court can only act upon what [Riley] did and the consequences of his action on third parties or third persons are not to be considered.

So based on that information and that information alone that the court has considered, the court does find that a stint at the [DOC] would prove to [Riley] the severity of these actions as it seems that the one year that was previously imposed, [Riley] was not, I guess, sent to the [DOC] as he was housed here.

Tr. Vol. II, pp. 39-41.

[14] The trial court ordered that Riley serve three years in the DOC and indicated that "[u]pon his release, [Riley] is to obtain a new addictions assessment and do any follow up that's necessary." Tr. Vol. II, p. 41. The court also extended Riley's probation for one year and recommended that while incarcerated, Riley participate "in the INSOMM program, if acceptable, or if accepted." Tr. Vol. II, p. 41. The trial court further addressed Riley, stating the following:

Mr. Riley, these are very serious matters [and] you need to start taking them seriously. The court does not feel that you are taking this sentence seriously and that is why it has imposed the sentence which it has. You have not been a participant in this case and the court hopes that you will not only be a participant,

but gain some understanding and knowledge to avoid these actions in the future.

Tr. Vol. II, pp. 41-42.

# Discussion and Decision

[15] Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled. The trial court determines the conditions of probation and may revoke probation if the conditions are violated. Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed. If this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants. Accordingly, a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances.

*Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007) (internal citations omitted).

A probation hearing is civil in nature and the State need only prove the alleged violations by a preponderance of the evidence. *Cox v. State*, 706 N.E.2d 547, 551 (Ind. 1999). We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of witnesses. *Id*. If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation. *Id*.

*Smith v. State*, 963 N.E.2d 1110, 1112 (Ind. 2012).

[16] "A person's probation may be revoked if 'the person has violated a condition of probation during the probationary period.'" *Id*. (quoting Ind. Code § 35-38-2-3(a)(1)). "However, if the condition violated involves a financial obligation, then the probationer must be shown to have recklessly, knowingly, or intentionally failed to pay." *Id*. "[I]t is the State's burden to prove both the violation and the requisite state of mind in order to obtain a probation revocation." *Runyon v. State*, 939 N.E.2d 613, 616 (Ind. 2010). With respect to the ability to pay, it is the probationer's burden "to show facts related to an inability to pay and indicating sufficient bona fide efforts to pay so as to persuade the trial court that further imprisonment should not be ordered." *Id*. at 617 (citing *Woods v. State*, 892 N.E.2d 637, 641 (Ind. 2008)).

[17] In *Smith*, the Indiana Supreme Court considered the sufficiency of the evidence to prove that a probationer recklessly, knowingly, or intentionally attempted to circumvent the terms of his probation by failing to meet his financial obligation. In doing so, the Indiana Supreme Court held as follows:

> First, as we observed in *Runyon* "because the phrase 'recklessly, knowingly, or intentionally' appears in the disjunctive and thus prescribes alternative considerations, the state of mind requirement may be satisfied by adequate evidence that a defendant's failure to pay a probation imposed financial obligation was either reckless, knowing, or intentional." 939 N.E.2d at 616. Indiana Code section 35-41-2-2(b) provides that a person engages in conduct "knowingly" if, when he or she engages in the conduct, the person is aware of a "high probability" that he or she is doing so. Because knowledge is a

mental state of the actor, it may be proved by circumstantial evidence and inferred from the circumstances and facts of each case. *See Young v. State*, 761 N.E.2d 387, 389 (Ind. 2002).

963 N.E.2d at 1113. The Court found that the evidence was such that the trial court, acting as fact-finder, "could reasonably conclude that Smith knowingly failed to pay current child support every week as required by the terms of his probation." *Id*. at 1114. The Indiana Supreme Court further found that Smith had failed to carry his burden to prove that his finances were such that he was not able to make the required payments. *Id*.

[18] In claiming that the trial court abused its discretion in revoking his probation Riley argues that "there was no evidence presented that [he] recklessly, knowingly, or intentionally attempted to circumvent the trial court's orders by failing to complete his court ordered treatment." Appellant's Br. p. 10. We disagree.

[19] Aside from an inability to pay, the State was required to prove that Riley was aware of a high probability that he was not current on his financial obligations or that his inability to meet certain financial obligations kept him from complying with other terms of his probation. *See Smith*, 963 N.E.2d at 1113. The evidence indicates that Riley understood the terms of his probation but failed to seek out programs which would allow for more flexibility with regard to payment while enabling him to participate in the required addiction treatment. The evidence further indicates that Riley knew that he had failed to pay certain fees as required by the terms of his probation. The evidence also

indicates that Riley failed to attend, actively participate in and successfully complete a court-approved sex offender treatment program.[1]

[20] As for Riley's claimed inability to pay for the required addiction treatment and fees, Riley presented testimony during the evidentiary hearing regarding his financial situation. The trial court was not persuaded by Riley's testimony and found that Riley had the financial means to meet his financial obligations. Upon review, we consider the evidence most favorable to the judgment of the trial court and will not reweigh the evidence or reassess witness credibility. *See Smith*, 963 N.E.2d at 1112. As such, we will not disturb the trial court's determination that Riley failed to carry his burden of proving that he was unable to meet his financial obligation. We therefore conclude that the trial court did not abuse its discretion in revoking Riley's probation.

[21] The judgment of the trial court is affirmed.

Najam, J., and Riley, J., concur.

---

[1] Riley does not appear to make any claim regarding his ability to pay as to this term. As such, it would seem that Riley's failure to successfully participate in and complete the court-ordered sex offender treatment would be sufficient, without more, to support the revocation of Riley's probation.