**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

FILED
May 31 2013, 9:26 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANTHONY S. CHURCHWARD**
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANIEL RODGERS-CONWELL, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1210-CR-546 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D04-1006-FC-121

**May 31, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Daniel Rodgers-Conwell, Jr., appeals the revocation of his probation for his failure to maintain good behavior. Rodgers-Conwell raises one issue, which we revise and restate as whether the evidence is sufficient to support the revocation of his probation. We affirm.

FACTS AND PROCEDURAL HISTORY

On June 10, 2010, the State charged Rodgers-Conwell with battery as a class C felony, domestic battery as a class D felony, and criminal recklessness as a class D felony. In September 2010, Rodgers-Conwell pled guilty to battery as a class C felony. On October 4, 2010, the court sentenced Rodgers-Conwell to six years with two years suspended to probation, and the State dismissed the remaining charges. The order of probation stated that Rodgers-Conwell must behave well.

On July 28, 2012, Fort Wayne Police Officer Stephen Ealing was dispatched to a location and saw Rodgers-Conwell walking down the street and trying to catch up to Shakenya McWilliams, who appeared to be in distress, was crying, and was wearing dirty and torn clothes. Officer Ealing asked Rodgers-Conwell what was going on, and Rodgers-Conwell shouted that McWilliams fell down and she needs some help while McWilliams stood behind Rodgers-Conwell and "just looked at [Officer Ealing] and shook her head no, that that was not accurate what happened." Transcript at 13.

Officer Ealing asked Rodgers-Conwell to put his hands behind his back, and Rodgers-Conwell "got kind of angry, stand-off-ish, took what could be described as a pre-attack indicator, he clenched his fist, took a big deep breath, [and] started walking towards" Officer Ealing. Id. Officer Ealing took his Taser out of its holster, pointed it at

2

Rodgers-Conwell, and ordered him to the ground. After a minute or two, Rodgers-Conwell eventually followed Officer Ealing's order.

Officer Ealing called for backup, and Officer Mark Bell arrived. Officer Bell placed Rodgers-Conwell in handcuffs and into Officer Ealing's vehicle. Officer Bell observed that Rodgers-Conwell's demeanor was "very hostile" and that he showed signs of intoxication such as red, watery eyes and his breath smelled of alcohol. Id. at 26.

Officer Ealing observed that McWilliams had some swelling to her face, her lower lip was cut open and bleeding, and her clothes were very dirty. McWilliams was also crying and "absolutely fearful for being around" Rodgers-Conwell. Id. at 14. McWilliams told Officer Ealing that she was driving down the road with Rodgers-Conwell, that he asked to use her phone, and that he punched her in the face when she said no. McWilliams also said that Rodgers-Conwell turned the car off while the vehicle was in motion and choked her with his arm causing her to be unable to breathe. According to McWilliams's statements, she attempted to exit the vehicle, but Rodgers-Conwell grabbed her by her pants and ended up pulling her back into the vehicle with such force that it ripped her underwear into three pieces. McWilliams managed to escape, but Rodgers-Conwell chased her down, threw her to the ground, and punched her while she was on the ground. McWilliams told Officer Ealing that she was experiencing some cramping and that she was twenty weeks pregnant with Rodgers-Conwell's child. Officer Ealing looked in the vehicle and saw one section of McWilliams's underwear hanging from the steering wheel, another section of her underwear on the passenger floor,

and her "hair piece was laying in the center of the car between the seats like on the center console." Id. at 18.

Officer Kenneth Johnson also arrived on the scene and noticed when McWilliams attempted to start her vehicle that "[t]he ignition part for the key was still in the on position" which was unusual because "[w]hen a vehicle is stopped the steering wheel tends to be locked and the ignition is usually in the off position and none of those were in that position." Id. at 28-29. Officer Johnson attempted to start the vehicle which took approximately thirty minutes.

Rodgers-Conwell was arrested for battery resulting in bodily injury to a pregnant woman as a class C felony and strangulation as a class D felony. In August 2012, the State filed a petition to revoke probation alleging that Rodgers-Conwell "[d]id not maintain good behavior. Committed the offense of count I, Battery Resulting in Bodily Injury to a Pregnant Woman, Class C Felony and count II, Strangulation, Class D Felony, cause number 02D05-1208-FC-239." Appellant's Appendix at 42.

On October 18, 2012, the court held a hearing on the State's petition to revoke probation. Officer Ealing, Officer Bell, and Officer Johnson testified to the foregoing facts. Rodgers-Conwell objected to Officer Ealing testifying as to McWilliams's statements on hearsay grounds, and the court overruled the objection. The State also introduced photographs of McWilliams's injuries, her dirty clothes, and her underwear in the vehicle. After the State rested, Rodgers-Conwell moved for a directed finding, which the court denied.

4

Rodgers-Conwell introduced and the court admitted a notarized sworn statement from McWilliams which stated in part that she and Rodgers-Conwell were having a disagreement on July 28, 2012, but that "at no time did [she] ever feel in jeopardy of [her] safety as a result of this incident." Defendant's Exhibit A. Rodgers-Conwell testified that McWilliams told him that she had received a call saying that he was cheating on her, that they started arguing, and that McWilliams stopped the car "real fast" and bit her lip. Transcript at 38. Rodgers-Conwell denied striking McWilliams in any way. Rodgers-Conwell also testified that McWilliams attempted to run, then slipped and fell, and that the police officer put McWilliams's panties on the steering wheel. During rebuttal, Officers Ealing, Johnson, and Bell, testified that they did not place the underwear on the steering wheel.

The court found that Rodgers-Conwell violated the terms and conditions of probation by not maintaining good behavior and ordered that Rodgers-Conwell serve two years in the Department of Correction.

ISSUE AND STANDARD OF REVIEW

The issue is whether the evidence is sufficient to support the revocation of Rodgers-Conwell's probation. Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled. Smith v. State, 963 N.E.2d 1110, 1112 (Ind. 2012). A trial court's probation decision is subject to review for abuse of discretion. Id. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. Id. A probation hearing is civil in nature and the State need prove the alleged violations by only a preponderance of the evidence.

5

Id. We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of witnesses. Id. If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke it. Id. The violation of a single condition of probation is sufficient to revoke probation. Wilson v. State, 708 N.E.2d 32, 34 (Ind. Ct. App. 1999).

DISCUSSION

A person's probation may be revoked if "the person has violated a condition of probation during the probationary period." Ind. Code § 35-38-2-3(a)(1). In order to obtain a revocation of probation, "the state must prove the violation by a preponderance of the evidence." Ind. Code § 35-38-2-3(f). "In proving that a defendant has violated the condition of 'good behavior,' the State must prove by a preponderance of the evidence that the defendant has engaged in unlawful activity." Justice v. State, 550 N.E.2d 809, 810 (Ind. Ct. App. 1990). "[I]t is always a condition of probation that a probationer not commit an additional crime." Braxton v. State, 651 N.E.2d 268, 270 (Ind. 1995), reh'g denied.

Rodgers-Conwell argues that the evidence is insufficient and points to his testimony and the notarized statement from McWilliams which stated that he never threatened her physically, verbally, or emotionally on July 28, 2012. Rodgers-Conwell does not argue that Officer Ealing's testimony regarding McWilliams's statements was inadmissible, but argues that the "issue is whether this hearsay testimony which was the sole evidence upon which the trial court based its findings that [he] violated his probation

6

was sufficient." Appellant's Brief at 10-11. Rodgers-Conwell also contends that "[t]he State may argue that the photographs provided sufficient corroboration; however, the injuries depicted in the photographs were all explained by Mr. Rodgers-Conwell during his testimony." Id. at 11. The State argues that the admissible hearsay evidence and photographs provided sufficient evidence from which the trial court could reasonably conclude by a preponderance of the evidence that Rodgers-Conwell violated the terms of his probation because he did not maintain good behavior.

Rodgers-Conwell's argument asks us to reweigh the evidence, which we will not do. Based upon the record, including the evidence that Rodgers-Conwell punched McWilliams in the face, choked her, pulled her back into the vehicle, threw her to the ground, and punched her further, we conclude that the State presented substantial evidence of probative value to support the trial court's conclusion that Rodgers-Conwell violated his probation by not maintaining good behavior. See, e.g., Whatley v. State, 847 N.E.2d 1007, 1010 (Ind. Ct. App. 2006) (refusing to reweigh the evidence, although the defendant offered contrary evidence to that submitted in support of revocation, and affirming the trial court's decision to revoke the defendant's probation).

For the foregoing reasons, we affirm the trial court's revocation of Rodgers-Conwell's probation.

Affirmed.

RILEY, J., and BRADFORD, J., concur.